IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MARTIN EDWARD JARAMILLO,

       Plaintiff,

vs.                                                          No. 1:19-CV-00488-KRS

ANDREW SAUL, Commissioner of
Social Security,

       Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court upon Plaintiff's Motion to Reverse and Award Benefits, with Supportive Memorandum (Doc. 16), dated December 19, 2019, challenging the determination of the Commissioner of the Social Security Administration ("SSA") that Plaintiff is not entitled to disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-34. The Commissioner responded to Plaintiff's motion on February 20, 2020 (Doc. 19), and Plaintiff filed a reply brief on March 5, 2020 (Doc. 21). With the consent of the parties to conduct dispositive proceedings in this matter, *see* 28 U.S.C. § 636(c); FED. R. CIV. P. 73(b), the Court has considered the parties' filings and has thoroughly reviewed the administrative record. Having done so, the Court concludes that the Administrative Law Judge (the "ALJ") erred in her decision and will therefore GRANT Plaintiff's motion.

### I. PROCEDURAL POSTURE

On February 8, 2012, Plaintiff protectively filed an application for disability insurance benefits. (*See* Administrative Record ("AR") at 86). Plaintiff alleged that he had become disabled on February 28, 2008, due to spinal stenosis, kyphosis, chronic body pain, rheumatoid arthritis, depression, and degenerative joint disease. (*Id.* at 217, 219). His application was denied

at the initial level on September 15, 2012 (*id.* at 86-99), and at the reconsideration level on April 18, 2013 (*id.* at 100-16). Plaintiff requested a hearing (*id.* at 127-30), which ALJ Ann Farris conducted on July 15, 2014 (see *id.* at 56-85). Plaintiff was represented by counsel and testified at the hearing. (*Id.* at 56, 61-77). Vocational expert Mary Diane Weber also testified at the hearing. (*Id.* at 78-83).

On August 15, 2014, the ALJ issued her decision, finding that Plaintiff was not disabled under the relevant sections of the Social Security Act. (*Id.* at 24-34). Plaintiff requested that the Appeals Council review the ALJ's decision (*id.* at 15-18), but this request was denied (*id.* at 1-7). Plaintiff subsequently sought judicial review, and on December 18, 2017, the Honorable Steven C. Yarbrough, United States Magistrate Judge, granted Plaintiff's motion to reverse the Commissioner's decision and remanded the case to the SSA for further proceedings. (*Id.* at 816-28). In particular, Judge Yarbrough held that the ALJ erred in her consideration of the opinion evidence provided by psychological consultative examiner Paula Hughson, M.D. (the "CE"). (*See id.*).[1] Following remand, on June 1, 2018, the Appeals Council vacated the ALJ's decision for further proceedings consistent with Judge Yarbrough's order. (*See id.* at 847).

Meanwhile, Plaintiff filed a subsequent claim for supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83f. (*See id.*). As part of the development of this claim, Plaintiff was examined a second time by the same CE. (*See id.* at 744, 1009-15). The SSA found Plaintiff to be disabled as of July 28, 2016. (*See id.* at 847). This decision did not impact the issue of Plaintiff's disability before his date last insured of September 30, 2013, which was still the subject of his Title II application. (*See id.*).

---

[1] *See also Jaramillo v. Berryhill*, No. 1:16-cv-428 SCY, 2017 WL 6507089 (D.N.M. Dec. 18, 2017).

As such, the ALJ conducted a second hearing concerning Plaintiff's Title II claim on November 15, 2018. (*Id.* at 756-88). Plaintiff was again represented by counsel and testified at the hearing. (*See id.* at 756, 763-82). Also testifying at the hearing was vocational expert Thomas Greiner. (*Id.* at 783-86). At this hearing, at Plaintiff's request, the ALJ amended his onset date to January 2, 2012. (*See id.* at 762).

On January 24, 2019, the ALJ issued her decision, finding that Plaintiff was not disabled under the relevant sections of the Social Security Act for the period in question. (*Id.* at 736-47). Plaintiff did not file exceptions to the ALJ's decision, and the Appeals Council did not otherwise assume jurisdiction; thus, the ALJ's decision became the final decision of the Commissioner after 60 days. *See* 42 U.S.C. § 405(g); 20 C.F.R. § 404.984(d). On May 24, 2019, Plaintiff filed the complaint in this case seeking review of the Commissioner's decision. (Doc. 1).

## II. LEGAL STANDARDS

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining "whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016); *see also* 42 U.S.C. § 405(g). If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *See, e.g.*, *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). Although a court must meticulously review the entire record, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *See, e.g.*, *id.* (quotation omitted).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation

omitted); *Langley*, 373 F.3d at 1118 (quotation omitted). Although this threshold is "not high," evidence is not substantial if it is "a mere scintilla," *Biestek*, 139 S. Ct. at 1154 (quotation omitted); "if it is overwhelmed by other evidence in the record," *Langley*, 373 F.3d at 1118; or if it "constitutes mere conclusion," *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005) (quotation omitted). Thus, the Court must examine the record as a whole, "including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan*, 399 F.3d at 1262. While an ALJ need not discuss every piece of evidence, "[t]he record must demonstrate that the ALJ considered all of the evidence," and "a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). "Failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984) (quotation omitted).

### B.  Disability Framework

"Disability," as defined by the Social Security Act, is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The SSA has devised a five-step sequential evaluation process to determine disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); *Wall v. Astrue*, 561 F.3d 1048, 1051-52 (10th Cir. 2009); 20 C.F.R. §§ 404.1520, 416.920. If a finding of disability or non-disability is directed at any point, the SSA will not proceed through the remaining steps. *Thomas*, 540 U.S. at 24. At the first three steps, the Commissioner considers the claimant's current work activity and the severity of his

impairment or combination of impairments. *See id.* at 24-25. If no finding is directed after the third step, the Commissioner must determine the claimant's residual functional capacity ("RFC"), or the most that he is able to do despite his limitations. *See* 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1). At step four, the claimant must prove that, based on his RFC, he is unable to perform the work he has done in the past. *See Thomas*, 540 U.S. at 25. At the final step, the burden shifts to the Commissioner to determine whether, considering the claimant's vocational factors, he is capable of performing other jobs existing in significant numbers in the national economy. *See id.*; *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step sequential evaluation process in detail).

### III. THE ALJ'S DETERMINATION

The ALJ reviewed Plaintiff's claim pursuant to the five-step sequential evaluation process. (AR at 737-38). She first determined that Plaintiff had not engaged in substantial gainful activity since his onset date. (*Id.* at 738). She then found that Plaintiff suffered from the following severe impairments: degenerative disc disease, depression, anxiety, polysubstance abuse, post-traumatic stress disorder, and antisocial personality disorder. (*Id.* at 739).

At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments which met the criteria of listed impairments under Appendix 1 of the SSA's regulations. (*See id.*). In so holding, the ALJ found that Plaintiff was markedly limited in interacting with others but only mildly or moderately limited in the other three broad areas of functioning (understanding, remembering, or applying information; concentrating, persisting, or maintaining pace; and adapting or managing himself), meaning that Plaintiff did not satisfy the "paragraph B" criteria of sections 12.04, 12.06, and 12.08 of Appendix 1. (*See id.* at 739-40).

Proceeding to the next step, the ALJ reviewed the evidence of record, including Plaintiff's subjective symptom evidence and the CE's reports and opinions. (*See id.* at 740-45). In doing so, the ALJ accorded "significant weight" to the CE's September 2012 opinions but "no weight" to the CE's 2018 opinions. (*See id.* at 744-45). Based on her review of this record evidence, the ALJ concluded that Plaintiff possessed an RFC for "less than a full range of sedentary work," with limitations including "no interaction with the general public, occasional superficial interactions with coworkers, and limited interactions with supervisors." (*Id.* at 740).

Moving to step five, the ALJ concluded that Plaintiff could not perform any past relevant work. (*See id.* at 745). However, the ALJ also cited testimony from vocational expert Thomas Greiner (the "VE") to the effect that Plaintiff could perform other jobs existing in significant numbers in the national economy if he were restricted to the aforementioned RFC. (*See id.* at 746). The ALJ adopted this testimony and concluded that Plaintiff's work was not precluded by his RFC and that he was not disabled. (*See id.* at 746-47).

## IV. DISCUSSION

Plaintiff challenges the ALJ's assessment of and reliance on the CE's September 2012 report (*see* Doc. 16 at 11-12)[2] as well as two purported step-five errors (*see id.* at 12-16). Because the Court holds that the ALJ erred in her treatment of the CE's report prior to step five, the Court does not reach Plaintiff's additional claims of error. *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).[3]

---

[2] Plaintiff does not challenge the ALJ's decision to accord no weight to the CE's February 2018 report.
[3] In reaching this conclusion, the Court entirely disregards Plaintiff's ten-page exhibit citing other decisions concerning this ALJ and her consideration of opinion evidence. (*See* Doc. 16 Exh. A). Plaintiff cites no relevant relationship between those decisions and the instant case, and he points to no reason why those cases—a tiny fraction of the thousands of adjudications by the ALJ over an almost eight-year period—should have any impact on the issues presented in *this* case. Plaintiff's counsel is encouraged not to repeat this approach in future filings before this Court.

The CE performed a psychiatric examination for 60 minutes on September 11, 2012. (AR at 478). Following this examination, the CE assessed Plaintiff with marked limitations in all three abilities listed under the "social interactions" functional domain—his ability to interact with the public, his ability to interact with coworkers, and his ability to interact with supervisors. (*Id.* at 483).[4] After Judge Yarbrough remanded this matter to the Commissioner, the ALJ accorded "significant weight" to the CE's opinions and found in relevant part as follows:

> [The CE's] findings of marked limitations in three areas of social functioning—with coworkers, supervisors, and the public—are reflected in my residual functional capacity finding for work involving no interaction with the general public, occasional superficial interactions with coworkers, and limited interactions with supervisors. The claimant's long[-]time work as a plumber and vocational instructor suggest that he had at least adequate social skills to maintain employment.

(*See* AR at 744).

Plaintiff now contends that the ALJ has "consciously manipulat[ed] her findings to support a finding of no disability," that her according of significant weight to the CE's opinions requires a finding of disability in light of the marked limitations he found in social functioning, and that there is no medical evidence in the record to support the ALJ's conclusion that Plaintiff has adequate social skills to maintain employment. (*See* Doc. 16 at 11-12). The Commissioner maintains that the RFC devised by the ALJ adequately accounts for the CE's findings. (*See* Doc. 19 at 6-7).

As a preliminary matter, the Commissioner is incorrect in stating that the VE testified that Plaintiff could work despite a finding of marked limitations. (*See id.* at 7) ("Dr. Hughson found a 'marked' or serious limitation, . . . which the vocational expert testified would not preclude all work activity."). In fact, the VE provided no testimony at all addressing the work

---

[4] The CE also found a marked limitation in one other ability and moderate limitations in five other abilities. (*See id.*). Plaintiff does not appear to challenge the ALJ's treatment of those findings.

7

available for claimants with marked limitations in social interactions or other functional abilities. The VE did testify that jobs were available for Plaintiff *if* his RFC could be limited to "[n]o interaction with the general public, occasional superficial interactions with co-workers, and limited interactions with supervisors" (*see* AR at 784)—the same social limitations that the ALJ later included in Plaintiff's RFC (*see id.* at 740). But the VE also testified that "[b]asically, [Plaintiff] couldn't work" if he could "rarely" interact appropriately with supervisors, because "[i]f you can't get along with the people you work for, you can't work." (*Id.* at 785-86). The question, then, is whether the CE's finding that Plaintiff is markedly limited in social interactions can be accommodated by the restrictions proposed by the ALJ, or whether those marked limitations required something more akin to the "rare" interactions with supervisors posited by Plaintiff at the hearing.

The Court begins with a basic review of the degrees of limitation severity. In a related context, Appendix 1 of the SSA's regulations provides that mental disorders are evaluated on a five-point rating scale, with "no limitation" at one end and "extreme limitation" at the other. *See* 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.00(F)(2) (emphasis added). Just above the level of "no limitation," a "mild" limitation signifies only "slightly limited" functioning on a sustained basis, while a "moderate" limitation exists where a claimant's functioning on a sustained basis is only "fair." *See id.* Beyond that, a "marked" limitation" in an ability exists when a claimant's "functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited." *Id.* While not as severe as an "extreme" limitation, which indicates that the claimant is wholly unable to perform an ability on a sustained basis, *see id.*, SSA policies state that a marked limitation is serious enough that a claimant who is markedly limited in an ability

"cannot usefully perform or sustain the activity" in question. SSA Program Operation Manual System ("POMS") § 24510.063(B)(3).[5]

The Tenth Circuit has recognized that "an [ALJ] can account for *moderate* limitations by limiting the claimant to particular kinds of work activity." *Smith v. Colvin*, 821 F.3d 1264, 1269 (10th Cir. 2016) (citing *Vigil v. Colvin*, 805 F.3d 1199, 1204 (10th Cir. 2015)) (emphasis added). For instance, since unskilled work requires the handling of only *simple* instructions and *simple* work-related decisions, the court in *Vigil* held that a claimant's RFC for unskilled work accounted for his moderate limitations in concentration, persistence, and pace, since those moderate limitations only precluded that claimant from handling *complex* tasks. *See Vigil*, 805 F.3d at 1203-04 (citing SSR 96-9p, 1996 WL 374185, at *9 (July 2, 1996)).[6]

Although *Vigil* does not address whether an ALJ can similarly account for *marked* limitations in one or more abilities by including restrictions in an RFC, persuasive caselaw suggests that such limitations can be adequately addressed by an RFC that either significantly limits the claimant's performance of those abilities or fully exempts her from performing them. For instance, the Tenth Circuit held in *Nelson* that where a claimant was found to have marked limitations in certain abilities that were not required to perform unskilled work, such as interacting with the public, an RFC that was effectively limited to unskilled work adequately accounted for those limitations. *See Nelson v. Colvin*, 655 F. App'x 626, 629 (10th Cir. 2016)

---

[5] The POMS is "a set of policies issued by the [SSA] to be used in processing claims." *McNamar v. Apfel*, 172 F.3d 764, 766 (10th Cir. 1999). The court "defer[s] to the POMS provisions unless [it] determine[s] they are 'arbitrary, capricious, or contrary to law.'" *Ramey v. Reinertson*, 268 F.3d 955, 964 n.2 (10th Cir. 2001). Although both Appendix 1 and POMS § 24510.063 apply to Paragraph B evaluations of functional domains at step three of the sequential evaluation process, the Commissioner contends (and Plaintiff does not dispute) that the severity definitions governing step three are applicable to the more detailed evaluation of a claimant's individual abilities within those domains determined at step four. (*See* Doc. 19 at 6-7).

[6] SSRs are binding on the SSA, and while they do not have the force of law, courts traditionally defer to SSRs since they constitute the agency's interpretation of its own regulations and foundational statutes. *See Sullivan v. Zebley*, 493 U.S. 521, 531 n.9 (1990); 20 C.F.R. § 402.35; *see also Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1051 (10th Cir. 1993) (SSRs entitled to deference).

(unpublished). In *Trujillo*, the Honorable Gregory B. Wormuth, United States Magistrate Judge, held that an RFC allowing for only simple and routine tasks, instructions, and environments imposed "significant limitations" that "adequately reflect[ed]" a claimant's marked limitations in concentration and pace. *See Trujillo v. Berryhill*, No. 16-cv-851 GBW, 2017 WL 2799981, at *8-9 (D.N.M. Mar. 21, 2019).

In a relevant recent decision, the Honorable Carmen E. Garza, United States Magistrate Judge, found no legal error in the ALJ's efforts to incorporate the claimant's mental limitations into her RFC. *See Vargas v. Berryhill*, No. 18-cv-210 CG, 2019 WL 184083, at *11-12 (D.N.M. Jan. 14, 2019). In that case, two medical sources disagreed as to whether the claimant was "moderately" or "markedly" limited in her ability to interact with the general public. *See id.* at *12. Without clearly resolving this conflict, the ALJ nevertheless included an RFC restriction limiting the claimant to "seldom contact with the general public." *See id.* Judge Garza found that this restriction "accounts for a marked limitation in [the claimant's] difficulty 'sustain[ing]' this conduct." *See id.*

As each of these cases demonstrates, the key consideration when determining whether an RFC properly accounts for a claimant's limitations is whether or not that RFC permits the claimant to perform the abilities in question despite the established limitations. *See, e.g.*, *id.*, at *11 (holding that "a restriction limiting the claimant to simple work [will be] found to be sufficient [when] the limitations omitted from the ALJ's analysis are directly correlated to the claimant's ability to perform more demanding work"). That said, the relationship between the severity of a claimant's limitations and the restrictions included in his RFC is not always straightforward, since "there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question."

*Chapo v. Astrue*, 682, F.3d 1285, 1288 (10th Cir. 2012). Despite the foregoing authorities, courts must remember that a mere restriction to "unskilled" work, or even to a "vague catch-all term" like "simple work, is generally not "sufficient to capture the various fundamentally distinct mental limitations" encompassed in a medical opinion. *See id.* at 1290 n.3; *see also Oceguera v. Colvin*, 658 F. App'x 370, 374 (10th Cir. 2016) (unpublished) (citing *Chapo*, 682 F.3d at 1290 n.3) (suggesting that an ALJ usually must do "much more than merely limit [a claimant] to simple work" in order to account for his or her mental RFC limitations); *Vargas*, 2019 WL 184083, at *11 (noting that under *Chapo*, "the circumstances in which the ALJ may omit specific limitations in his RFC assessment by limiting the claimant to simple or unskilled work have been narrowly defined").

With these principles established, the Court turns to the parties' arguments. Plaintiff contends that his marked limitations in social interactions effectively bar him from performing even unskilled sedentary work.[7] (*See* Doc. 16 at 12, 16). To the extent that Plaintiff intends to make this point with respect to his marked limitations in interacting with the general public, the Court finds that his argument is not well-taken given that his RFC expressly disallows any interactions with the public. *See Nelson*, 655 F. App'x at 629 (noting that RFC for unskilled work accounted for marked limitations in interacting with the public, since "unskilled work does not require these abilities"); *see also, e.g.*, *Herrera v. Saul*, No. 18-cv-1080 SCY, 2019 WL 6468872, at *7-9 (D.N.M. Dec. 2, 2019) (citing, *e.g.*, *Nelson*, 655 F. App'x at 629) (finding that ALJ accounted for agency consultant's finding of marked limitation in interacting with public by

---

[7] As in her previous decision, the ALJ did not expressly limit Plaintiff to "unskilled" work. *Cf. Jaramillo*, 2017 WL 6507089, at *5 (rejecting Commissioner's argument that Plaintiff's purported RFC for unskilled work accounted for his limitations, since "[t]he ALJ . . . included no such limitation [to unskilled work] in the RFC"). Nevertheless, an analysis of the requirements for unskilled work is useful for understanding the lowest baseline threshold of mental abilities necessary for sedentary work. *See* SSA POMS DI § 25020.010(B)(2)-(3).

limiting claimant to unskilled work); *cf.* SSA POMS DI § 25020.010(B)(3) (listing mental abilities critical for unskilled sedentary work, with no reference to interactions with the public).

The situation regarding Plaintiff's marked limitations in interacting with coworkers and supervisors is more complicated. SSA policies state that *all* sedentary work—including unskilled work—requires a claimant to, among other things, "[r]espond[] appropriately to supervision, co-workers and usual work situations" on "a sustained basis." *See* SSR 96-9p, 1996 WL 374185, at *9; SSR 85-15, 1985 WL 56857, at *4 (Jan. 1, 1985) (similarly describing the abilities required, "on a sustained basis," by the "basic mental demands of competitive, remunerative, unskilled work"). Breaking this down further, SSA policies and procedures provide that to perform even unskilled work, a claimant must demonstrate an ability to (among other things) "accept instructions and respond appropriately to criticism from supervisors" and "get along with coworkers or peers without (unduly) . . . exhibiting behavioral extremes." *See* SSA POMS DI § 25020.010(B)(2)-(3). "A *substantial loss of ability* to meet any of these basic work-related activities would severely limit the potential occupational base. This, in turn, would justify a finding of disability because even favorable age, education, or work experience will not offset such a severely limited occupational base." SSR 85-15, 1985 WL 56857, at *4 (emphasis added).

A "marked" limitation in the ability to interact with coworkers or supervisors is not consistent with these baseline demands for sedentary work. Again, a marked limitation exists when a claimant's "functioning in this area independently, appropriately, effectively, and on a sustained basis is *seriously limited*," 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.00(F)(2)(d) (emphasis added), meaning that the claimant "cannot *usefully* perform or sustain the activity" in question, SSA POMS § 24510.063(B)(3) (emphasis added). A limitation in interacting with coworkers and supervisors that is so "serious" as to prevent a claimant from "usefully

12

perform[ing] or sustain[ing]" those abilities undeniably amounts to "[a] substantial loss of ability" to interact with coworkers and supervisors, which in turn "severely limit[s] the potential occupational base" so as to "justify a finding of disability." *See* SSR 85-15, 1985 WL 56857, at *4. Therefore, if Plaintiff is indeed markedly limited in his ability to interact with coworkers and supervisors, this would necessarily preclude him from performing even unskilled sedentary work, since a "substantial loss" of these social functions would leave him unable to "[r]espond[] appropriately to supervision, co-workers and usual work situations" on "a *sustained* basis." *See* SSR 96-9p, 1996 WL 374185, at *9 (emphasis added); (*see also* AR at 786) ("If you can't get along with the people you work for, you can't work.").

Persuasive caselaw further supports the conclusion that a "marked" limitation in an ability is inconsistent with the degree of restrictions included in Plaintiff's RFC. For example, in *Knowlton*, even though an agency consultant found that the claimant was markedly limited in her ability to interact with the public, the ALJ assigned the claimant an RFC allowing for "occasional interactions with . . . the general public." *See Knowlton v. Berryhill*, No. 18-cv-194 KBM, 2019 WL 1299669, at *2-3, *6 (D.N.M. Mar. 21, 2019). The Honorable Karen B. Molzen, United States Magistrate Judge, held that this RFC "failed to adequately account for Plaintiff's marked limitation" in that sphere. *See id.* at *6.[8] Similarly, the ALJ's restriction limiting Plaintiff to "occasional superficial interactions with coworkers" does not amount to a sufficiently "significant limitation[]" on the performance of that task, *cf. Trujillo*, 2017 WL 2799981, at *9,

---

[8] Judge Molzen observed that an RFC simply limiting the Plaintiff to unskilled work might have sufficed to account for the claimant's marked limitation, since public interactions are not required for unskilled work. *See id.* (citing *Knight v. Colvin*, No. 15-cv-882 KBM, 2016 WL 9489144, at *2-3, 6 (D.N.M. Dec. 5, 2016)). By contrast, appropriate responses to coworkers and supervisors on a sustained basis is critical to all sedentary work, included unskilled work. *See* SSR 96-9p, 1996 WL 374185, at *9; SSR 85-15, 1985 WL 56857, at *4; SSA POMS DI § 25020.010(B)(2)-(3).

and does not adequately account for his marked limitation in that ability, *cf. Knowlton*, 2019 WL 1299669, at *6.

*Vargas*, in which Judge Garza held that an RFC restriction for "seldom contact with the general public" sufficiently accounted for the claimant's marked limitation in that ability, *see* 2019 WL 184083, at *12, does not compel a contrary conclusion. The term "seldom" means "on only a few occasions; **rarely**; infrequently; not often."[9] Accordingly, as Plaintiff has argued (*see* Doc. 21 at 1-2) (citing AR at 785-86), an RFC restricting him to "rarely" interacting with supervisors or coworkers may have been sufficient to account for his marked limitations in those abilities. By instead restricting Plaintiff to "limited" interactions with supervisors, a "vague catch-all term" that does not meaningfully specify the degree of interactions permitted under the RFC,[10] the ALJ failed to adequately account for his marked limitation in interacting with supervisors. *See Chapo*, 682 F.3d at 1290 n.3. And since a limitation to "occasional" interactions is broader than the "seldom" interactions allowed for marked abilities in *Vargas*, that decision does not support the RFC restrictions on Plaintiff's interactions with coworkers, either.

Despite these decisions, the Commissioner argues that Plaintiff's RFC is consistent with his marked limitations in these abilities because a marked limitation is not as severe as an "extreme" limitation. (*See* Doc. 19 at 6-7). However, the Commissioner cites no legal authority to support the proposition that an RFC restriction for "limited" or "occasional" conduct adequately accounts for a marked limitation in the relevant ability. *Cf.* D.N.M.LR-Civ. 7.3(a) ("A motion, response or reply must cite authority in support of the legal positions advanced.").

---

[9] Seldom," COLLINS ENGLISH DICTIONARY – COMPLETE & UNABRIDGED (2012 digital ed.), *available at* https://www.dictionary.com/browse/seldom?s=t (emphasis added).

[10] *See* "Limited," COLLINS ENGLISH DICTIONARY – COMPLETE & UNABRIDGED (2012 digital ed.), available at https://www.dictionary.com/browse/limited?s=t (vaguely defining "limited" to mean ""confined within limits[,] restricted or circumscribed").

Moreover, as the foregoing discussion illustrates, the weight of binding and persuasive authority reviewed by the Court supports the contrary conclusion.

There is, perhaps, an argument that the ALJ was entitled to *reject* the CE's finding that Plaintiff was markedly limited in interacting with coworkers and supervisors in light of his pre-onset work history. (*See* AR at 744) (finding that previous jobs "suggest that [Plaintiff] had at least adequate social skills to maintain employment"). But the ALJ *did not* reject the CE's findings of marked limitations. Rather, as the Commissioner acknowledges, the ALJ took the incorrect position that the RFC restrictions she included "reflected" those marked limitations. (*See id.*); (*see also* Doc. 19 at 5). Moreover, the Commissioner points to no other medical evidence of record that the ALJ should have relied on to find that Plaintiff's limitations were less than marked.

In summary, the ALJ adopted the CE's limitations, but then imposed RFC restrictions that did not properly account for those limitations. Because this legal error resulted in an RFC that is not supported by substantial evidence, remand is required.

## V. CONCLUSION

The ALJ erred in her review of Plaintiff's application for disability insurance benefits by failing to adequately account for marked limitations in Plaintiff's social interaction, despite purporting to adopt those limitations. Therefore, Plaintiff's Motion to Reverse and Award Benefits (Doc. 16) is **GRANTED**, and the Court remands this case back to the SSA for proceedings consistent with this opinion.

**KEVIN R. SWEAZEA**
**UNITED STATES MAGISTRATE JUDGE**